Third case for argument today is Chatman against the Board of Education. Mr. Holloway. Good morning, your honors. May it please the court. Before delving into the individual non-selections that are at issue in this case, not higher. I'd like to first address an argument that Ms. Chatman brought below the district court as well as to this court in that the board's conduct here was retaliation in and of itself across the spectrum of all of the non-selections. If the court will recall, the settlement agreement that led to this situation was embodied the resolution of the prior protected activity that we're claiming was retaliate with the basis for retaliation. That settlement agreement in paragraph 10 D required that the board at Ms. Chatman's counsel and her request send her to interviews for which she was qualified. In other words, if she were to identify positions such as a principal or assistant principal, the board could say, we're not sending you because you're clearly not qualified. She applied for three types of positions, one teacher's assistant, one in library assistant, and several special education classroom assistants, one and two. The board has taken the position that with respect to the teacher's assistant, the position never existed. With respect to the library assistant position, it concedes that the position was offered to an individual named KD, but that it was later subsequently eliminated due to budgetary reasons. And then most importantly, the SICA positions, both at McDade and Ray School, the board claims that now that the plaintiff or Ms. Chatman was facially unqualified because she did not possess a license. Now I'll get to the problem, the individual problems with those selections, but overall, the board's conduct here, a reasonable jury could look at this and say, you sent the plaintiff, Ms. Chatman, to interviews for which you knew she was not qualified based on the position that the board has taken subsequent to these A reasonable jury could find retaliation in the board's conduct with respect to all of the positions because of the board's position that it has taken now. And that also took for the EEOC that Ms. Chatman was not qualified. And sort of the fact in the record that supports this most strongly is towards the end of the process, the board's counsel, Linda Hogan, herself stated, I understand that this is tedious, as she was referring to in an email discussion with the talent officer, but we just have to get to the end of the six months so we avoid sanctions. In other words, that piece of evidence, a reasonable jury could take a look at it and say, well, the board wasn't really intending ever to hire her, they just wanted to run out the clock. And therefore, that's retaliation. Now, with respect to the individual positions, the first one, Earl, the district court found that Ms. Chatman's claim regarding the position that Earl was time barred, because the only evidence according to the district court, and the board has also argued this, that there was any conduct at all that could fall within the statute was the interview that took place on September 10th of 2015. The district court and the board seem to flip the burden of proof here, the failure, I'm sorry, not failure to accommodate. The time bar issue is an affirmative defense. And therefore, the board had the burden of proof to establish that there was no genuine regarding that affirmative defense. Their response to Ms. Chatman was that a position never existed for which she interviewed at Earl. Linda Hogan sent Ms. Chatman's counsel an email saying she should report to Earl School for an interview on September of 2015. She did so. There's no evidence to suggest that she did not. And then months later, years later, the board takes position. Yes, she interviewed, but there was no position that ever existed. So there's definitely an issue of fact here, because at some point, the board sent her to a job interview for at least on the face of it, they believe existed. And then at some point, they took the position that at least as late as September 2017, which is the first time that Ms. Chatman found out that there was no position that existed when they responded to the EEOC. Counsel. Yes. The district court decided this case by saying that there was no evidence in the record that the plaintiff's age or race mattered to the decisions. You haven't begun to address yet the ground on which this case was decided. What is your response to the district court's rationale? That there is no age with respect to age or race discrimination? Well, your honor, what we used to call direct evidence, there is no admission by anyone. And there's no evidence in the record that anyone admitted that. But the overall status of the evidence is such that with respect to the positions, particularly, for example, with Morales, our client is obviously well over well over 40 years old at the time she interviewed. And the principal selected someone who was far younger than our client who had no experience in the position. This is a teacher's assistant position, which our client had had for 13 years with the board before she was terminated. Maybe I should put this differently. What is your best evidence that your client's age or race mattered in making the employment decision? That with respect to, I would say that with respect to age, that significantly younger individuals are hired who had less, far less experience than my client. That sounds like what you say in your brief. But the fact that the person hired was younger than the plaintiff is not evidence of age discrimination. It's the beginning of a prima facie case under the McDonnell Douglas test. But it's not any kind of evidence that would survive a statement of reasons by the defendant. So I'm looking for what evidence of discrimination there is. Well, under the McDonnell Douglas test, your honor, the statements of reasons that the defendant or the board provided, we've established that they were pretextual. In other words, the board was not telling the truth. With respect to the position at Morales, they claim that it was never filled. It was not filled for budgetary reasons. A jury could look at, a reasonable jury could look at that as dissembling, as dishonesty, as a phony reason for not selecting her and therefore could conclude that age in that circumstance was the reason for the non-selection. As well as with protected activity with that, with respect to that position. Now, the only place where race comes into it is with the rate positions and that is with respect to Rokia Begum. Again, my client was qualified for the position facially. The defendant, the board claims they were not. And there's even pretext with respect to whether or not she was qualified for the position, at least facially qualified because of the issue regarding the necessity for and the CEQA license, as well as whether or not my client possessed one. But again, it all falls down to pretext here. The principal of Ray Elementary claimed that it was an absolute requirement for selectees to have a CEQA license. However, Rokia Begum, who is significantly younger than my client and also non-African American, was selected even though at the time she interviewed and for several weeks after that did not have an SECA license from the state, while my client did. A reasonable jury could take a look at that inconsistency, what we consider to be a falsehood, and say, okay, they didn't hire my client because she was African American and because she had protected activity. Your Honor, I'd like to reserve the last six minutes of my argument time for rebuttal, if that's okay. Certainly, Counsel. Thank you, Your Honor. Mr. Doyle. Can't hear you, Mr. Doyle. Thank you, Your Honors. May it please the Court, the District Court correctly ruled that summary judgment should enter for the defendant in this case. The plaintiff did not have sufficient evidence of discrimination or retaliation, and in fact, the proof in this record would not support a finding that CPS made any hiring decision based on Ms. Chapman's age, based on Ms. Chapman's race, or based on retaliation for Ms. Chapman's prior litigation. I'd like to begin with the same place that my colleague began with. In other words, the claim that he has raised that it was somehow retaliation to send Ms. Chapman out for interviews. This turns on a look at what that Law Division settlement agreement called for. Take a look at what that agreement has. It appears in the record at ECF Record Number 70-5. It's paragraphs 10D and 10E. In paragraph 10D of that agreement, Ms. Chapman was to identify positions that she had determined herself that she met the qualifications for. Raise those with CPS, and then CPS would schedule her for an interview. That's paragraph 10D. Paragraph 10D did not require CPS to do a screening for qualification before sending her to an interview. That's significant. Looking at what paragraph 10E says. Paragraph 10E says that CPS has no obligation to hire her and no obligation to do more than facilitate the scheduling of interviews as required under 10D. In other words, CPS and the board was not required to determine ahead of sending Ms. Chapman out for interviews whether she was qualified. It was entirely proper for the board to use the interviews to determine who was the best qualified person. That is what the settlement agreement says, and in fact, that's what Ms. Chapman herself says. It is Exhibit 70-2 in the record, page 25. It is the transcript at page 88, lines 1 through 12, where Ms. Chapman acknowledges that the agreement did not require the board to Now, strangely, she now makes the argument that sending her for an interview was retaliation. We're not aware of any case that holds that scheduling an interview for a person is an adverse employment action for the purpose of race discrimination, for the purpose of age discrimination, or for the purpose of retaliation. Moreover, we're not aware. He alleges in at least two situations that there wasn't any job when she got there. How do you deal with that? Your Honor, here's the thing. The library assistant is the Morales School. That position was a position when she interviewed for it. Before it was filled by someone who hired and earned from the principal of that school. In February, it was closed. No one ever worked in that job. It was a position that existed when she interviewed. For the Morales position... Please, go ahead, sir. Yes. For the Morales position, which is the teacher assistant position, Ms. Chapman identifies the date on which she interviewed in September of 2015, and I do not have an explanation for what it is that happened with that interview. I don't know, Your Honor. We don't know if anyone else was hired. We don't know who might have been hired. I don't know, and it's not in this record. I'm inviting your attention to the Earl or Early Kate situation. She apparently claims that there was no job there as well. Oh, I misspoke. I said Morales. Earl is the one that... Yes, now I know exactly the one you mean. This is the one that she interviewed for in September of 2015. Existential limitations. Correct. Your Honor, I don't know what happened with that position. It's not in the record who else was hired. It's not in the record how the board made any kind of decision. I don't know if there was a job there or not. I do know that Ms. Chapman says that she went and interviewed for it. That is not a breach of the Law Division Settlement Agreement. In fact, that follows the Law Division Settlement Agreement. We sent her, scheduled an interview for her. I do not know how it is it could be retaliation to comply with the Law Division Settlement Agreement. In any event, the Earl position is time barred, and my colleague raises this also. Here is how the analysis on that issue works. There is no evidence in this record of anything that happened with the Earl position after September of 2015. There is no allegation. There is no date identified. There is no conduct by the board. There is no impact occurring, as against Ms. Chapman, on any particular date. So in your view, it's simply a failure proof on this part of the plaintiff? Yes, Your Honor. Yes, the plaintiff does not identify anything that happened within the limitations period. Moreover, the plaintiff does not identify someone else who was hired that would suggest that there is an age, a race, or a retaliation decision going on in connection with that Earl position. Your Honor, I'd like to discuss, if I could, one other issue that my colleague raised, which is the license status. There is no evidence in this record that, as of 2015, Ms. Chapman told any of the interviewers that she had an ISBI license to be an SECA. That evidence doesn't exist in this record. Instead, he now claims that it was pretext to say that we hired people who had interviews. You'll recall that at there are three people who were hired, two African Americans and Ms. Begum. Now, Your Honor, here's the problem. The document that they rely on that's saying the board knew that she had a license is dated 2017. You can see it on the face of the document. It is ECF 86-1 at pages 77 to 82. It is her Exhibit 15 in her summary judgment. What it is, apparently, is a printout from a search of the licensing database. The printout on its face in the top left corner shows that it was 2017, two years after the that anyone at any of the schools knew that Ms. Chapman had the requisite license for this position, just as, importantly, her own testimony is that she did not have the license. That is ECF Exhibit 70-2 at page 47. The transcript page is 175 lines 11 through 13, where Ms. Chapman says, I did not have the license that I would have needed. In any event, one of the candidates got the license between the time of her interview and when she began working. The most important part about that hiring decision is there is a basis expressed in that affidavit describing how it is the three individuals who were chosen for those SECA positions were the best qualified. They either had the best recommendations, the best work experience, or the best contact with those schools. There is no we caught them in a lie that would suggest pretext. In any event, there is nothing that suggests that age or race played a role in the decision not to hire Ms. Chapman. There is simply no proof of that. Your Honors, this is a case in which the plaintiff took no depositions. There are affidavits from some of the principals in the record. Now, in her reply brief, the plaintiff describes why it is she did not take any depositions, and she relies for that on a document that was filed with the EEOC. Importantly, that document was stricken in the district court from the summary judgment record. It was Exhibit 4 to the plaintiff's summary judgment submission. The district court struck that document because there was no foundation for it and there was no hearsay basis explained. On appeal, Ms. Chapman has never argued anything to the documents that were stricken would survive a hearsay objection. That EEOC document was not in the record in the district court on summary judgment, and it should not be part of the record in this court as this court reviews the summary judgment record either. Your Honors, for all of the reasons stated in our brief and the reasons I've discussed today, there was no proof of racial that the board or CPS made a decision based on Ms. Chapman's prior litigation activity. Summary judgment was proper. We ask the case be affirmed. Thank you, Mr. Doyle. Anything further, Mr. Holloway? Yes, Your Honor. With respect to going back to my colleague's comments or arguments regarding the settlement agreement in paragraph 10D, counsel indicated that it wasn't the board's responsibility to predetermine whether or not Ms. Chapman was qualified to be sent to the positions where she requested an interview. But whether or not that was required in the agreement is kind of a red herring. Ms. Hogan, who was the individual communicating with Ms. Chapman's counsel, told her that she was qualified and informed the principals when she was coming that she was qualified. She informed Principal Perry that here's a resume for an individual that will qualify for the position that you have open. And also, Ms. Hogan, in an email that the SECA one and two positions based on no child left behind in her extensive experience. And I also want to get back to, respond to counsel's arguments regarding the no depositions fact or facts in the case. The EEOC document, we did argue before the court that it should be admitted because it was to an administrative body by the board. In those admissions, Principal Perry denied ever meeting Ms. Chapman. And then subsequent to discovery closing, he now claims that there's the extensive basis for why he hired the people he did and did not hire Ms. Chapman. A jury could look at those two statements side by side and find that that is pretextual. A year and change after the interviews that are the subjects of this case, the board represents to the EEOC and a request for further information that the principal at McDade, Mr. Perry has never met Ms. Chapman. Now they are claiming that because we didn't take depositions that somehow there's no issue of fact. Well, look at the record. The facts that the affidavit that affidavits that the board relies both by Ms. Thole and by Principal Perry deny any personal recollection of Ms. Chapman or the interview. They rely entirely on documents, particularly with respect to Ms. Thole's affidavit in support of summary judgment that surfaced well after the close of discovery. We would have been in the same position taking their depositions before discovery that we found ourselves in a summary judgment. There's definitely a issue of fact with respect to whether or not Mr. Perry even claims he met my client, Ms. Chapman. So a jury could look at that as dissembling with respect to why they didn't hire her. And again, with respect to the EEOC responses by the board, it's interesting that the board now claims that those are wouldn't survive a hearsay objection. Again, as we argued below, those that document would survive a hearsay objection because it's missions by the defendant. But the entire basis of hearsay is to establish an initiative of reliability. The hearsay rule, the exception to it is the board. The board seems now to be claiming that its own responses to the EEOC were inherently unreliable and untrustworthy, which a jury again could look at that position as evidence of dissembling and evidence of inconsistencies, which are the hallmarks of pretext in the Seventh Circuit and in most and all the circuits with respect to McDonnell Douglas. And going back to the panel's earlier question regarding evidence of discrimination, once we do establish the prima facie case, which we believe we have, and the board has articulated their supposed non-discriminatory reasons, and then we are If the jury believes that the board is lying with respect to these five or seven positions, or is lying overall with respect to their treatment of Ms. Chapman in sending her to interviews where they have now decided she was not qualified, then they themselves can decide that the only reason was age, her race, or her protected activity. That's just the way, obviously, the panel knows that's the way McDonnell Douglas works, but unless the panel has any more questions, we would rest on our briefs and we would ask that the court reverse the motion or the district court's entry of summary judgment and remand for trial. Thank you, Mr. Holloway. The case is taken under advisement.